OPINION BY JUDGE BROBSON Christine A. Reuther and Ani Marie Diakatos (Objectors) appeal from an order of the Court of Common Pleas of Delaware County (trial court), dated September 19, 2017, denying their Emergency Petition for Relief Regarding the November 2017 General Election (Petition), seeking to strike Christine Rossi (Candidate) from the general election ballot. The two issues before this Court are: (1) whether the Petition was timely filed; and (2) whether Candidate’s failure to file her Statement of Financial Interests (SOFI) with Nether Providence Township (Township) is a fatal defect. We now affirm. The facts of this case are not in dispute. Candidate received sufficient votes in the Township’s May 17, 2017 primary as a write-in candidate to win the Republican nomination for Township Tax Collector. The Delaware County Bureau of Elections (Bureau) notified Candidate that she was certified as the Republican nominee and instructed her to submit her SOFI to the Bureau and the Township by June 30, 2017, in order to have her name appear on the general election ballot. (See Certified Record (C.R.), Petition at Ex. A (June 2, 2017 Letter).) On June 30, 2017, Candidate timely filed her SOFI with the Bureau but not the Township. Based upon a Right-to-Know Law[2] request made to the Township on September 6, 2017, Objectors learned that Candidate had not filed her SOFI with the Township. On September 13, 2017, Objectors filed the Petition with the trial court. On September 14, 2017, Candidate filed her SOFI with the Township. The trial court conducted a hearing on September 18, 2017. On September Y8, 2017, Candidate filed an answer with new matter to the Petition. On September Í9, 2017, the trial court denied the Petition because there is no “statutory provision making [Candidate’s] filing of her [SOFI] either improper or a fatal defect to her candidacy.” (Trial Ct. Op. at 3.) Objectors appealed to this Court.[3] As a preliminary matter, we must determine whether Objectors’ Petition was timely filed.[4] Candidate and the Bureau argue that Objectors’ Petition was untimely because it was filed more than 70 days after Candidate’s nomination was certified. They assert that Section 977 of the Pennsylvania Election Code (Election Code)[5] makes clear that objections to nomination petitions and papers must be filed “within seven days after the last day for filing said nomination petition or paper.”[6] Notably, there is no similar provision in the Election Code[7] for challenges to write-in candidates.[8] Under the circumstances, Candidate and the Bureau suggest that .because Section 977 of the Election Code makes the objection deadline seven days from the candidate’s last date to make public his/her intention to run for office by filing the necessary nomination petitions or papers, in this instance Objectors should similarly have until seven days after Candidate’s 30-day deadline to show h'er intention to be a general election candidate. First, “[c]itizens of the Commonwealth are free to cast their vote for their candidate of choice, by write-in or otherwise.” Working Families Party v. Commonwealth, 169 A.3d 1247, 1259 (Pa. Cmwlth. 2017). Further, Section 922 of the Election Code, as amended, 25 P.S. § 2882, specifies that “[candidates ... who receive a plurality of votes of their party electors ,.' in the political district ..at the primary election ... shall be candidates of their respective parties, and it shall be the duty of the proper county boards to print their names u;pori the official ballots .at the succeeding election.” In this case, Candidate did not seek ballot access by filing a nomination petition in advance of the primary that made public an intention to be nominated by the Republican party.[9] Rather, the, Township’s qualified Republican electors nominated Candidate by write-in and declared by popular vote that she is the party’s candidate for Tax Collector in the general:election. Under such circumstances, the primary election is over, and the majority of the Republican electors have spoken. So long as Candidate took the steps necessary to have her name placed on the general election ballot, she would be the Republican candidate for Township Tax Collector. Moreover, in In re Nomination Petition of Guzzardi, 627 Pa. 1, 99 A.3d 381 (2014),[10] the Pennsylvania Supreme Court made abundantly clear: Elections are appropriately regulated by the political branch precisely because they are inherently political. This essential legislative governance fosters orderly, efficient, and fair proceedings. In this regard, statutory .filing requirements and attendant deadlines ‘ensure the orderly functioning of the primary-election timetable so that those responsible will have sufficient time to prepare the ballot properly.’ Gomes v. Rhode Island State Bd. of Elections, ... 120 R.I. 951, 393 A.2d 1088, 1090 ([R.L] 1978). In re Guzzardi, 99 A.3d at 385. Accordingly, the judiciary should act with restraint, in the election arena, subordinate to express statutory directives. Subject to constitutional limitations, the Pennsylvania General Assembly may require such practices and procedures as it may deem necessary to the orderly, fair, and efficient administration of public elections in Pennsylvania...-. Pennsylvania courts may not mitigate the legislative.ly[-]prescribed outcome through recourse to equity. Id. at 386 (emphasis added). The Supreme Court has also admonished: We note that, ‘when interpreting a statute we must , listen attentively to what the statute says, but also to what it does not say.’ Johnson v. Lansdale Borough, 146 A.3d 696, 711 (Pa. 2016). In other words, ‘it is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include.’ Commonwealth v. Johnson, ... 611 Pa. 381, 26 A.3d 1078, 1090 ((Pa.] 2011). Hanaway v. Parkesburg Grp., LP, 168 A.3d 146, 164 (Pa. 2017) (emphasis added). Thus, where the General Assembly did not impose a deadline on when objectors may challenge the validity of a person’s write-in candidacy, this Court is prohibited from doing so. As discussed above, an individual seeking to be a party’s nominee is different and distinct from a write-in candidate. The Election Code expressly regulates the steps an individual must adhere to in order to have his or her name placed on the primary ballot. The General Assembly has not promulgated similar procedures for write-in candidates. Accordingly, because no statutory deadline exists by which Objectors had to object to Candidate’s write-in candidacy, we hold that the Petition was timely , (or more accurately not untimely) filed on September 13, 2017. Relative to the substance of Objectors’ challenge that Candidate’s failure to file her SOFI with the Township is a fatal defect, there is no question that SOFI filings are mandatory before a candidate may hold public office.[11] The Genera! Assembly specifically pronounced in Section 1104(d) of the Public Official and Employee Ethics Act (Ethics Act), 66 Pa. C.S. § 1104(d): “No public official shall be allowed to take the oath of office or enter or continue upon h[er] duties, nor shall [s]he receive compensation from public funds, unless [s]he has filed a [SOFI] as required by [the Ethics Act].” With regard to a candidate filing a petition to appear on the ballot, Section 1104(b) of the Ethics Act, 66 Pa. C.S. § 1104(b), requires the filing of a SOFI. It provides, in relevant part: (2) Any candidate' for county-level or local office shall file a [SOFI] for the preceding calendar year with the governing authority of the political subdivision in which [s]he is a candidate on oy before the last day for filing a petition to appear on the ballot for election. A copy of the [SOFI] shall also be appended to such petition. (3) No petition to appear on the ballot for election shall be accepted by the respective State or local election officials unless the petition has appended thereto a [SOFI] as set forth in paragraphs (1) and (2). Failure to file the [SOFI] in accordance with the provisions of this chapter shall, in addition to any other penalties provided, be a fatal defect to a petition to appear on the ballot. 65 Pa. C.S. § 1104(b) (emphasis added). Accordingly, an individual seeking to be placed on the ballot who fails to file his/her SOFI with his/her nomination petitions or papers and with the governing body of the local political subdivision must have his/her name stricken'from the ballot when timely challenged.[12] See Guzzardi. Section 1104(b) of the Ethics Act-, specifically applies to persons who become candidates by filing nomination petitions or papers. The Ethics Act, however, does not contain a similar provision applicable to write-in candidates. Nevertheless', Section 15.3(e) of the Ethics Commission’s regulations, 51 Pa. Code § 15.3(e), addresses the filing of a SOFI by write-in candidates. It mandates: [13] A write-in[ ]candidate shall file a [SOFI] within SO days of having been nominated or elected unless the person declines the nomination or office within that period of time.[14] (1) The [SOFI] shall be filed with the [Ethics] Commission for State[-]level public office and with the governing authority of the political subdivision wherein the person has been elected or nominated for county or local level office. (2) For the purposes of calculating the 30-day period during which the [SOFI] shall be filed, the time shall commence on the date that the appropriate board of elections certifies the individual as the winner of a nomination or election. 51 Pa. Code § 15.3(e) (emphasis added). “Candidate” is defined in the Ethics Act, in relevant part,.as one who has “taken the action necessary under the laws of this Commonwealth to qualify [her]self for nomination or election[,]” and includes write-in candidates who have not declined within 30 days.[15],[16] Section 1102 of the Ethics Act, 65 Pa. C.S. § 1102. Clearly, Section 15.3(e) of the Ethics Commission’s regulations requires Candidate, as a write-in candidate who has not declined the nomination, to' file her SOFI with the Township within thirty days of the certification of the election results. It does not, however, make the filing of a SOFI within that time period a condition precedent to Candidate’s name appearing on the municipal or general election ballot, as it does not contain fatal defect language similar to that contained in Section 1104(b)(3) of. the Ethics Act or specify any consequence for failure to file a timely SOFI.[17],[18] The lack of á' consequence in Section 15.3(e) of the Ethics Commission’s regulations and the lack of the applicability of Section 1104(b)(3) of the Ethics Act to write-in candidates' appearing on the municipal or general election ballot do not mean that there is no recourse or consequence when a write-in candidate fails/refuses to file a SOFI in compliance with the regulation. Rather, complaints may . be filed pursuant to Chapter.21 of the Ethics Commission’s regulations, 51 .Pa. Code §§ 21.1-.30, pertaining to investigations. Complaints involving late or deficient filings may be handled pursuant to Section 9.3 of the Ethics Commission’s regulations, 51 Pa. Code § 19.3, pertaining to late or deficient filings, which provides,-in part: (b) If a complaint is received alleging that a required filing is deficient or has not been made, the Commission may elect to proceed in the matter under this section rather than through the investigative procedures of Ghapter 21 (relating to investigations). (1) Upon election, the complainant will be notified of the decision as well as the final resolution of the matter. (2) In determining whether to proceed under this section, the Commission may consider whether: (i) The deficient filing or failure to file was intentional. (ii) The filer had prior notice of the requirements of the act. (iii) The filer has in the past complied with the act. (c) The individual notified in accordance with subsection (a) has 20 days from the mailing date of the notice to correct deficiencies or to file a Statement of Financial Interests. If an individual fails to file or to correct his statement within that time, the Commission will review the matter to determine whether a civil penalty is appropriate under the act, (Emphasis added.) Here, Candidate timely filed her SOFI with the Bureau but failed to file it with the Township. Within one day of Objectors’ filing of the Petition, Candidate filed her SOFI with the Township, thereby bringing herself into compliance. It is questionable whether the Ethics Commission would impose a penalty under these circumstances, but Objectors, nevertheless, could file a complaint with the Ethics Commission, if they so choose. Because there is no provision in the Ethics Act, Election Code, or the Ethics Commission’s regulations that makes a write-in candidate’s failure to file a SOFI “fatal” in terms of the candidate’s position on the municipal or general election ballot, the Court holds that noncompliance with the regulation is a matter for enforcement by the State Ethics Commission in the first instance, and not the courts.[19] We are mindful of our Supreme Court’s admonishment in Hanaway, that the courts may not add to a statute a provision which the General Assembly did not see fit to enact. See Hanaway, 168 A.3d at 154. Based on the foregoing, .we affirm the trial court’s order. ORDER AND NOW, this 26th day of October, 2017, the order of the Court of Common Pleas of Delaware County, dated September 19, 2017, is AFFIRMED. . Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-3104. . "Our scope of review is limited to determining whether the trial Court’s findings of fact are supported by substantial evidence, whether the trial court abused its discretion or whether the trial court committed an error of law.” In re Prosperino, 972 A.2d 92, 94 n.4 (Pa. Cmwlth. 2009). . Although Candidate raised the Petition's timeliness to the trial court, see Objector Br. at 12, the trial court did not address that issue. .. Act of June 3, 1937, P.L. 1333, as amended, 25 P.S, § 2937. .Section 977 of the Election Code provides, in relevant part: All nomination petitions and papers received and filed within the periods limited by this [Election Code] shall be deemed to be valid, unless, within seven days after the last day for filing said nomination petition or paper, a petition is presented to the court specifically setting forth the objections thereto, and praying that the said petition or paper be set aside. This Court explained: [A] nomination petition is filed by a person seeking to be a candidate in a political party's primary. A 'nomination paper’ is filed by a minor party candidate to get on the general election ballot. However, the standards for challenging a nomination paper or petition are virtually the same, as are the procedures. In re Nomination Papers of Mann, 944 A.2d 119, 124 (Pa. Cmwlth.) (emphasis added), aff'd sub nom. In re Mann, 944 A.2d 77, 596 Pa. 455, 456 (Pa. 2008). . Act of June 3, 1937, P.L. 1333, as amended, 25 P.S. §§ 2601-3591. . Generally, "the Ethics Act[, 65 Pa. C.S. §§ 1101-1113,] and the Election Code are in pari materia, and, therefore, the language of each act should be considered together.” In re Nomination of Paulmier, 594 Pa. 433, 937 A.2d 364, 371 (2007). The Supreme Court has explained their interactions, as follows: [A] candidate wishing to run for election must follow the provisions of both [the Ethics Act and the Election Code,] as it is the Election Code which governs the filing of a candidate's nomination petition with the Secretary of the Commonwealth, but the Ethics Act that mandates that a [SOFI] be appended. Id. at 369. . Gaining ballot access by nomination petition versus by write-in are distinctly different processes, Section 902 of the Election Code, as amended, 25 P.S. § 2862, provides: All candidates of political parties ... for ... elective public offices within this State, .,. shall be nominated, and-.-.. under the provisions ... of this [Election Code] or under the party rules, are required to be elected by the party electors ... at primaries held in accordance with the provisions of this act, except as otherwise provided in this [Election Code]. Only persons who have filed nomination petitions may have their names appear on the primary ballot. Section 907 of the Election Code, as amended, 25 P.S: § 2867, provides: The names of candidates ... for party nominations ... - shall be printed upon the official primary ballots or' ballot labels, of a designated party, upon the filing of separate nomination petitions in their behalf, ... signed by duly registered and - enrolled members of such party who are qualified electors of ... the political district ... within which the nomination is to be made or election is to be held.... The name of no candidate shall be placed upon the official ballots or ballot labels of a political party to be used at any primary, unless such petition shall have been filed in his behalf. Otherwise, primary candidates may be nominated by write-in, without having previously filed nomination petitions. See Section 1002(b) of the Election Code, as amended, 25 P.S.'§ 2962(b); Section 1216(e) of the Election Code, as amended, 25 P.S. § 3056(e); Section 1112 — A of the Election Code, added by Section 4 of the Act of July 11, 1980, P.L. 600, 25 P.S. § 3031,12. . In Guzzardi, as in the instant matter, the * candidate filed his SOFI with only one of two required offices. . The purpose behind the Ethics Act and SOFI filing requirement is based' upon the General.Assembly’s declaration: In order to strengthen the faith and confidence of the people of this Commonwealth in their government, the Legislature further declares that the people have a right to be assured that the financial interests of holders of or nominees or candidates for public office do not conflict with the public trust, Because public confidence in government can best be sustained by assuring the people of the impartiality and honesty of public officials, this [Ethics Act] shall be liberally construed to promote complete financial disclosure as specified in this chapter. Furthermore, it is recognized that clear guidelines are needed in order to guide public officials and employees in their actions. Thus, the General Assembly by this [Ethics Act] intends to define as clearly as possible those areas which represent conflict with the public trust. Section 1101.1(a) of the Ethics Act, 65 Pa. C.S. § 1101.1(a). . In In re Nomination Petition of Bryant, 578 Pa. 421, 852 A.2d 1193 (2004), our Supreme Court held that an objection to a candidate’s nomination petition based- on a failure to disclose information in a SOFI is subject to a statutory seven-day deadline for presenting objections to nomination petitions. The Supreme Court reasoned: ’“[I]n light of the requirement that a nomination petition 'shall be deemed to be valid’ where it is unchallenged within the requisite period, [Section 977 of the Election Code,] 25 P.S. § 2937, a candidate’s noncompliance with Section 1104 of the Ethics Act may not be newly raised as a basis for setting aside a petition outside of the statutorily-prescribed period.” In re Bryant, 852 A.2d at 1196. The Supreme Court observed that this Court, in considering the challenges to the SOFI, held ‘‘that strict adherence to the seven-day requirement was not required as concerns challenges based on an incomplete or untimely-filed financial disclosure statement, since little preparation is necessary for a candidate to defend against such objections.” Id. at 1194. The Supreme Court reversed our Court, holding that our decision was contrary to the precedent of the Supreme Court, particularly its decision in State Ethics Commission v. Cresson, 528 Pa. 339, 597 A.2d 1146 (1991). In Cresson, the Supreme Court held “that petitions to set aside nomination petitions founded on asserted violations of the financial disclosure provisions of the Ethics Act must be filed within the seven-day period prescribed under Section 977 of the Election Code.” In re Bryant, 852 A.2d at 1195. The Supreme Court’s reasoning in In re Bryant and Cresson suggests that even challenges to the failure to file any SOFI must be made within seven days of the filing of the nomination petition to be considered. By extension, failure to file a SOFI at the time of filing a nomination petition would only be a fatal defect if timely challenged under Section 977 of the Election Code. Thus, there could be an instance where a candidate fails to file a SOFI with the governing authority of the political subdivision in which she is a candidate, but the failure goes unchallenged. In such instance, the failure would not-be a fatal defect. Nevertheless, recourse would be available through a complaint with the State Ethics Commission (Ethics Commission). See 51 Pa. Code § 19.3. . Section 1107(1) of the Ethics Act, 65 Pa. C.S. § 1107(1), commands the Ethics Commission to "prescribe and publish rules and regulations to carry out the provisions of [the Ethics Act].” Moreover, as an agency’s interpretation of law, “a regulation has the force and effect of law.” Borough of Bedford v. Dep’t of Envtl. Prot., 972 A.2d 53, 61 (Pa. Cmwlth. 2009). We note that although Objectors raised Section 15.3(e) of the Ethics Commission’s regulations in their Petition, the trial court did not address it. . We interpret this language as requiring a successful write-in candidate to affirmatively act within 30 days to decline the nomination. Otherwise, it is presumed that the candidate has accepted the nomination and will file the SOFI. . Section 1102 of the Ethics Act defines "candidate” as: Any individual who seeks nomination or election to public office by vote of the electorate .... An individual shall be deemed to be seeking nomination or election to such office if [s]he has: (1) received a contribution or made an expenditure or given his[/her] consent for any other person or committee to receive a contribution or make an expenditure for the purpose of influencing his nomination or election to such office ....; or (2) taken the action necessary under the laws of this Commonwealth to qualify himselfl/herself] for nomination or election to such office. The term shall include individuals nominated or elected as write-in candidates unless they resign such nomination or elected office within 30 days of having been nominated or elected. 65 Pa. C.S. § 1102. . Here, the Bureau certified the primary election results on May 31, 2017. (See Bureau Br. at 3.) In its June 2, 2017 Letter, the Bureau notified Candidate that she was certified as the Republican candidate for Township Tax Collector and instructed: Write-In Candidates who wish their name to appear on the November 2017 ballot are required to file with the [Bureau] on or before June 30, 2017 a Candidate's Affidavit/Waiver of Expenses Account Reporting Affidavit ... and a[SOFI].... Upon completion of the ábove[-]referenced documents, please return them to the [Bureau] and the governing authority for the office in which you were nominated so that your name can be placed on the, November ballot. (C.R., June 2, 2017 Letter) Section 910 of the Election Code, as amended, 25 P.S. § 2870, however, requires a candidate for office to file a candidate’s affidavit with or prior to filing nomination petitions or papers in order to be placed on the ballot, but it does not set forth a requirement that a successful write-in candidate file an affidavit. Nothing in the Election Code requires a successful write-in Candidate file anything to be placed on the ballot. . The Ethics Commission, through Section ■ 15.3(e) of the Ethics Commission's regulations, provided that Candidate "shall” file her SOFI with the Township and "shall" file it within 30 days of the Bureau's certification. Our Supreme Court has declared that "[t]he word ‘shall’ by definition is mandatory, and it is generally applied as such.” Chanceford Aviation Props., L.L.P. v. Chanceford Twp. Bd. of Supervisors, 592 Pa. 100, 923 A.2d 1099, 1104 (2007). Whether the Ethics Commission’s use of the term "shall” in the Regulation was intended as a mandate, depends upon "the perceived intent of the legislature.” Commonwealth v. Ferguson, 381 Pa.Super. 23, 552 A.2d 1075, 1079 (1988). There is no question that the General Assembly intended by the clear language in the Ethics Act to require candidates for public office to file their SOFIs in a particular place and by a particular date. See Section 1104 of the Ethics Act, Consistently, then, we have no hesitation in interpreting the Ethics Commission’s use of' the term "shall” in the Section 15.3(e) of the Ethics Commission's regulation as mandatory. Such an interpretation, however, does not negate the fact that neither the Ethics Act nor the Ethics Commission’s regulations provides for the penalty of striking a name from a ballot for failure to comply with the mandate of the regulátion. . Even if we were to agree with the dissent that the filing of a SOFI is a condition precedent to appearing on the general election ■ ballot, such that the courts under the Election Code must have the power to remove successful write-in candidates from the general or municipal election ballot who flaunt the Ethics Commission’s regulation, the outcome would remain the same. This is because, even if it were a condition precedent to appearing on the ballot, the failure of a write-in candidate to file a SOFI within the thirty-day period is not a fatal defect in the absence of the fatal defect language. Instead, it may be corrected prior to election and, therefore, would be an amendable defect. Candidate here cured the defect within a day of learning of her error: There is no evidence of any intent to deceive or conceal anything from voters. Accordingly, even assuming the Election Code . procedures for removing a candidate applied in this case, we would not remove Candidate from the ballot because she remedied the defect. . Section 1101.1(c) of the Ethics Act, 65 Pa. C.S. § 1101.1(c), makes the Ethics Commission responsible for administering and enforcing the Ethics Act. Section 1107(5) of the Ethics Act, 65 Pa. C.S. § 1107(5), requires the Ethics Commission to review state-level office candidates’ SOFIs and notify the candidate of any deficiencies, but there is no similar requirement for county or local agencies. Further, Section 302(j) of the Election Code, as amended, 25 P.S. § 2642(j), merely requires that county election boards shall "receive and determine ... the sufficiency of nomination petitions, certificates and papers of candidates for ... township ... and local party offices required by law or by party rules to be filed with the board.” At the trial court hearing, the Bureau’s counsel represented that the Bureau "[does not] police what gets filed in the individual township[]s, and boroughs, and school districts,” (C.R., Notes of Testimony, September 18, 2017, at 12.) These circumstances, however, do not negate the ability of an individual to file a complaint pursuant to Section 19.3 and Chapter 21 of the Ethics Commission’s regulations, much like how individual objectors file objections to nomination petitions. Moreover, while some may find it absurd to treat individuals differently depending on whether they became a candidate on the ballot through the nomination process or became a candidate based upon write-in votes, courts are not allowed to amend unambiguous statutes or regulations to cure absurdity. But see 1 Pa. C.S. § 1922 (requiring courts, in interpreting ambiguous provisions, to presume, inter alia, that the General Assembly does not intend a' result that is absurd or Unreasonable). We cannot read additional provisions into the Ethics Act or its regulations. Just as the Supreme Court in Guzzardi could not apply principles of equity to lessen the harsh result of statutory provisions that made failure to file a SOFI a.fatal defect, we cannot apply principles of equity to impose a sanction that neither the General Assembly nor the Ethics Commission has seen fit to impose in this circumstance. See Guzzardi, 99 A.3d at 385-86. Furthermore, there is at least one rational explanation for the disparate treatment of would-be candidates who petition to appear on a ballot and successful write-in candidates. The would-be candidate does not become a candidate until she files the SOFI. The successful write-in candidate, by contrast, has already won an election. Removing a potential candidate from the ballot for failure to file a timely SOFI as a fatal defect directly affects only that would-be candidate, but removing a successful write-in candidate deprives primary electors of their duly-elected nominee. Accordingly, it is not unreasonable that the General Assembly and the Ethics Commission would chose to treat the failure of a would-be candidate to file a timely SOFI as fatal, while at the same time allow a successful write-in candidate to amend and correct the same defect. ■